UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAWANNA THOMAS,<br>Plaintiff,<br>v.<br>CARONLY W. COLVIN, Acting Commissioner Of Social Security,<br>Defendant. | No. 2:14-cv-1099 AC<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f. SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

////

////

////

I. PROCEDURAL BACKGROUND

Plaintiff applied for SSI on January 24, 2012, alleging a disability onset date of September 9, 2011. Administrative Record ("AR") 12.[1] Plaintiff's application was disapproved initially, AR 96-101 (Exh. 1B), and on reconsideration, AR 102-06 (Exh. 2B). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), to challenge the disapproval. AR 109-10 (Exh. 4B). On June 27, 2014, ALJ L. Kalei Fong presided over the requested hearing. AR 27-67 (transcript of hearing). Plaintiff, who was represented by counsel, appeared and testified at the hearing. AR 29-54, 54-55. A vocational expert also appeared and testified at the hearing. AR 54, 55-65.

In a decision dated September 16, 2013, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 12-25 (decision and exhibit list). Plaintiff asked the Appeals Council ("Council") to review the ALJ's decision, and to consider additional evidence . AR 7 & 8. On March 6, 2014, the Council accepted "[t]reatment records from Paul Romea, M.D., for the period from April 3, 2014 to October 4, 2013" as additional evidence, and made it a part of the administrative record. AR 5. However, on the same date, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3.

Plaintiff filed this action on May 5, 2014. ECF No. 1; see 42 U.S.C. § 1383c(3). In due course, plaintiff was granted leave to proceed in forma pauperis, the parties consented to the jurisdiction of the magistrate judge, the Commissioner filed the administrative record, and the parties filed and fully briefed the pending cross-motions for summary judgment. ECF Nos. 4, 7, 10, 13, 19, 25.

Plaintiff seeks reversal and remand for calculation and payment of benefits, or in the alternative, remand to order a consultative examination of the plaintiff regarding her claims of depression and anxiety. Plaintiff argues that the ALJ erred: (1) by finding no evidence of severe, medically determinable mental impairments, namely, depression and anxiety, despite diagnoses

[1] The Administrative Record is electronically filed at ECF Nos. 13-1 to 13-11.

of those impairments by a nurse-practitioner and a licensed clinical social worker ("LCSW"), who were working as a team with medical doctors; (2) by failing to augment the administrative record with a mental health consultative exam if he found the diagnoses by the nurse-practitioner and the LCSW to be inadequate; and (3) by rejecting the opinions of plaintiff's treating doctors regarding plaintiff's pain arising from her rheumatoid arthritis, without providing "clear and convincing" reasons, or even "specific and legitimate" reasons supported by substantial evidence.

The Commissioner argues that the ALJ: (1) properly found that there was no record of a diagnosis of a medically determinable mental impairment by an acceptable medical source, and no record of treatment or hospitalization for it; (2) had no duty to order a mental status consultative exam; and (3) properly rejected the opinion of Dr. Mann, one of plaintiff's treating doctors.

For the reasons that follow, the court will deny plaintiff's motion for summary judgment, and will grant the Commissioner's cross-motion for summary judgment.

## II. FACTUAL BACKGROUND

Plaintiff was born on September 10, 1967, and was 43 years old on the alleged onset date of her disabilities, September 9, 2011. AR 12 & 19. Plaintiff's education ended at the eleventh grade, she has no high school diploma or General Equivalency Diploma ("GED"), and can communicate in English. AR 19 & 29. Plaintiff reports a brief work history, from 2006 to October 25, 2009, in which she worked as a recycler, a telemarketer and a caregiver. AR 244-51.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).[2]

---

[2] The right to judicial review of determinations under Title XVI is provided by 42 U.S.C. § 1383(c)(3), which provides that "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in (continued…)

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir.1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400

section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

F.3d 676, 679 (9th Cir. 2005).

IV. RELEVANT LAW – TITLE XVI

Supplemental Security Income ("SSI") is available under Title XVI of the Social Security Act (the "Act") for every income-eligible individual who is "disabled." 42 U.S.C. § 1381a; Department of HHS v. Chater, 163 F.3d 1129, 1133 (9th Cir. 1998) ("The Social Security Act directs the Commissioner of the Social Security Administration to provide benefits to all individuals who meet the eligibility criteria"). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Gutierrez v. Commissioner, 740 F.3d 519, 523 (9th Cir. 2014) (quoting 42 U.S.C. § 1382c(a)(3)(A)); Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (same).[3]

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to SSI benefits. 20 C.F.R. § 416.920(a)-(g); Barnhart v. Thomas, 540 U.S. 20, 25 & 25 n.1 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title XVI, as well as Title II). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not

[3] Title II of the Act provides for Disability Insurance Benefits, which are paid to eligible disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. This program defines disability in the same way as Title XVI. Bowen, 482 U.S. at 140.

> disabled. If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e) & (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5; Burch, 400 F.3d at 683 (plaintiff "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. . . . This Court has held that a claimant carries the initial burden of proving a disability") (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

When the plaintiff claims a mental impairment, the ALJ is required to follow a "special technique" at Steps Two and Three, to evaluate the plaintiff's disability. 20 C.F.R. § 419.920a(a). At Step Two, the ALJ first evaluates plaintiff's "pertinent symptoms, signs, and laboratory findings" to determine whether he has "a medically determinable mental impairment(s)." 20 C.F.R. § 419.920a(b)(1); Keyser, 648 F.3d at 725 (interpreting 20 C.F.R. § 1520a, the parallel, and identically worded, regulation under Title II). Second, the ALJ rates "the degree of functional limitation" caused by the mental impairments just identified, in four broad areas of functioning: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(b)(2) & (c)(1)-(3); Keyser, 648 F.3d at 725. The degrees can be "none," "mild," "moderate," "marked," or "extreme." 20 C.F.R. § 416.920a(c)(4). Episodes of decompensation are ranked "none," "one or two," "three," and "four or more." Id. Third, the ALJ determines the severity of the mental impairment, "in part based on the degree of functional limitation." 20 C.F.R. § 416.920a(d); Keyser, 648 F.3d at 725.

The ALJ proceeds to Step Three only if the mental impairment is "severe." Keyser, 648 F.3d at 725. The Commissioner documents this "special technique" in a "Psychiatric Review Technique Form ('PRTF')." Id.; see AR 41-51. At Step Three, the ALJ must determine if the

severe mental impairment identified in Step Two meets or equals the severity of a mental impairment in the Listings. 20 C.F.R. § 416.920a(d)(2); Keyser, 648 F.3d at 725. If it does not, the ALJ goes on to Step Four, returning to the sequential analysis.

## V. THE ALJ's REVIEW OF THE RECORD[4]

### A. Mental Impairment

Plaintiff sought treatment at the Primary Care Clinic. AR 15. The clinic noted that plaintiff's medications included Seroquel. Id. Plaintiff was seen there by Shirley Rigg, a nurse practitioner, starting on September 22, 2011. Id. After several visits, Rigg diagnosed plaintiff with dysthymic disorder on October 18, 2012. AR 456. Plaintiff was also seen there by Eloisa Yee, a licensed certified social worker ("LCSW"). Under "subjective" findings, Yee's notes state that plaintiff "daily has anhedonia, feels sad, has poor sleep, has low energy, poor appetite, feels bad about self, has poor concentration, moves slowly." AR 449. Yee diagnosed plaintiff with major depression and anxiety. AR 450. Yee further noted that plaintiff claims to have "poor concentration," which is Yee's only observation relating to any functional limitation arising from the depression.

The ALJ noted the lack of evidence in the record of plaintiff needing "any outpatient psychiatric treatment, mental health therapy, crisis interventions, emergency department visits, or psychiatric hospitalizations for her alleged condition." AR 15. At her mental health exams by her treating physician, Dr. Jaspreet Mann, plaintiff was found to be "oriented to time, place, person, and situation," to have "normal insight," to exhibit "normal judgment," and to demonstrate "the appropriate mood and affect." AR 503, 514, 518.

### B. Rheumatoid Arthritis

On January 3, 2011, plaintiff was treated by Dr. Ronald T. Whitmore, apparently in connection with an examination for workmen's compensation arising out of a work injury in October 2009. AR 300-05 (Exh. 2F). Dr. Whitmore's assessment for "lumbar radiculopathy"

[4] This review is limited to the part of the record relevant to the issues challenged on this appeal, namely, evidence of plaintiff's claim of depression, and the rejection of Dr. Mann's opinion.

was that "positive Waddel[l]s is a red flag." AR 303.[5] He was also "concerned about request for more and stronger medication in light of this." Id. Dr. Whitmore recommended that plaintiff "[r]eturn to work modified duty," and prescribed medications. AR 303. Dr. Whitmore again saw plaintiff on January 14, 2011. AR 309-13. Although plaintiff wanted "stronger medication for her back," Dr. Whitmore's opinion was that "the MRI does not support the need for stronger medication." AR 312. Dr. Whitmore noted that plaintiff raised her voice and was "not happy" with his unwillingness to consider other meds. AR 314.

Dr. Yi Y Myint saw plaintiff on February 22, 2011. AR 318-21. Dr. Myint, noting plaintiff's complaints about "unresolved low back pain," granted plaintiff's "reasonable" request for referral to a spine specialist. AR 319. Dr. Myint also determined that plaintiff could lift up to 10 pounds, and stand for 1 or 2 hours. AR 320. Dr. Myint saw plaintiff again on April 5, 2011. AR 322-24. Dr. Myint noted that plaintiff "stated she is now able to tolerate sitting and standing a little bit longer." AR 323. Dr. Myint also changed her assessment of plaintiff's functionality by indicating that plaintiff could lift 10-15 pounds. AR 324. On May 9, 2011, Dr. Myint again saw plaintiff. AR 325-28. After this visit, Dr. Myint noted that plaintiff "has multiple Waddell's signs." AR 326. Dr. Myint also noted that plaintiff "does walk up to two miles a day," and recommended against increasing "her narcotic intake, as this would just need to go further down the path of disability." AR 326. Dr. Myint saw plaintiff again on June 17, 2011. AR 329-31. The doctor told plaintiff that "there is no need for narcotic pain medications." AR 330. Plaintiff became "very upset and angry and stated that she will find another doctor for her needs." Id. Dr. Myint concluded that plaintiff needed no further treatment, discharged plaintiff, and recommended a return to full duty work. AR 330. On August 30, 2011, plaintiff called Kaiser to request a refill on her Vicodin (narcotic) prescription, stating that she just needed the Vicodin but did not need to see the doctor. AR 332. The request was refused, based upon the June 17th discharge. AR 332.

---

[5] Dr. Whitmore was apparently referring to a set of tests to determine if there are "non-organic" reasons for the asserted pain, such as psychological reasons.

On May 11, December 17, 2012, plaintiff was seen by Dr. McAlpine, apparently a treating physician. AR 442-46 (Exh. 8F). Dr. McAlpine declined to increase the dose of plaintiff's Methotrexate "in that it has done what [it] was supposed to do." AR 448.

On May 29, 2012, plaintiff was examined by Dr. Sanford Selcon. AR 420-28 (Exh. 5F). Dr. Selcon concluded that plaintiff "can sit in an 8-hour work period . . . without limitations," that she can stand/walk up to 2 hours, and that she can lift/carry 10 pounds occasionally. AR 423.

On April 8, 2013, Dr. Jaspreet Mann, a treating physician, completed a Medical Source Statement – Physical, a check-off form, regarding plaintiff. AR 494-95 (Exh. 10F). Dr. Mann reported that plaintiff could lift less than 10 pounds (whether frequently or occasionally), could stand and walk less than 2 hours, and could sit less than 6 hours. AR 494.

VI. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since January 24, 2012, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairment: rheumatoid arthritis (20 CFR 416.920(c)). . . .
>
> In addition . . . the claimant alleges depression. [T]he record is devoid of any diagnosis of a medically determinable mental impairment by an acceptable medical source as required in 20 CFR 416.913(a) (Ex. 1F, 2F, 3F, 4F, 5F, 8F, 10F, 12F, 13F). The claimant has not required any outpatient psychiatric treatment, mental health therapy, crisis interventions, emergency department visits, or psychiatric hospitalizations for her alleged condition. . . . Accordingly, the undersigned finds no evidence of a severe medically determinable mental impairment.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> While the claimant has symptoms of back and joint pains, the claimant's musculoskeletal impairments have not resulted in motor loss, reflex changes, sensory deficits or the degree of functional loss required by the musculoskeletal listings. Her impairments have not resulted in an inability to ambulate or perform fine and gross movements.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional

> capacity to perform sedentary work as defined in 20 CFR 416.967(a). Specifically, she can stand 2 hours in an 8-hour day with normal breaks, walk 2 hours in an 8-hour day with normal breaks, and sit 6 hours in an 8-hour day with normal breaks. She can occasionally climb ramps and stairs, balance, kneel, and crouch. She should avoid stooping and crawling and cannot climb ladders, ropes or scaffolds. . . .
>
> The claimant's allegations would find support in the opinion of treating physician Jaspreet Mann, MD. However, Dr. Mann's opinion is given little weight. Dr. Mann opined that the claimant could lift and carry less than 10 pounds, stand and walk less than 2 hours and sit less than 6 hours in an 8-hour day (Ex. 10F).
>
> Dr. Mann's opinion is unpersuasive for multiple reasons. First, Dr. Mann noted in his report that the limitations he proposed were based on "her description" (Ex. 10F/1, 2) rather than on any objective findings. His examinations include few specific objective findings to support his opinion (Ex. 13F/4, 15, 19). Indeed, in April 2013, Dr. Mann noted that there were "no x-ray findings to explain her back pain, complaints of intractable pain" (Ex. 13F/15). Further, this opinion is inconsistent with Dr. Mann's clinic notes in which he has refused to prescribe[] narcotic pain medications (Ex 13F/2, 19) as discussed above. Finally, Dr. Mann.s opinion is not consistent with the other medical evidence and opinions in [the] file.
>
> 5. The claimant is capable of performing past relevant work as a telephone solicitor and highway worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

AR 14-21. The ALJ concluded:

> 6. The claimant has not been under a disability, as defined in the Social Security Act, since January 24, 2010, the date the application was filed (20 CFR 416.920(f)).

AR 21.

## VII. ANALYSIS

At Step One, the ALJ found that plaintiff has not engaged in substantial gainful activity, a finding that is not challenged on this appeal. At Step Two, the ALJ found that plaintiff had the "severe" impairment of rheumatoid arthritis. AR 14. This finding is not challenged on this appeal.

### A. Step 2: Whether Plaintiff Had a Severe, Medically Determinable Mental Impairment

At Step Two, the ALJ also found "no evidence of a severe medically determinable mental impairment." AR 15. As noted above, at the first part of the Step Two "special technique"

applicable to mental impairment claims, the ALJ was required to evaluate plaintiff's "pertinent symptoms, signs, and laboratory findings" to determine whether she has "a medically determinable mental impairment[]," in this case, depression or anxiety. See 20 C.F.R. § 419.920a(b)(1); Keyser, 648 F.3d at 725.

Here, at the first part of the "special technique," the ALJ found that plaintiff did not have a medically determinable mental impairment. The ALJ's determination was based upon three factors: (1) the only diagnoses of depression or anxiety were made by a nurse practitioner and an LCSW, rather than by an "acceptable" medical source; (2) plaintiff has not received treatment for depression or anxiety; and (3) the mental examinations of plaintiff were "benign." AR 15. AR 15. Plaintiff challenges the ALJ's finding.

1. Diagnosis

On October 18, 2012, Shirley Rigg, a nurse practitioner at the Primary Care Center, diagnosed plaintiff with dysthymic disorder (persistent depressive disorder). AR 15, 456. On December 12, 2012, Eloisa Yee, an LCSW at the Primary Care Center, diagnosed plaintiff with major depressive disorder and anxiety disorder. AR 15, 450-51. In addition, the ALJ notes that plaintiff was prescribed Seroquel for depression at the Primary Care Clinic. See AR 15.[6] The ALJ concluded that "[t]hus, the record is devoid of any diagnosis of a medically determinable mental impairment by an acceptable medical source as required in 20 CFR 416.913(a)." AR 15.

Plaintiff argues that medical teams, which included medical doctors, diagnosed plaintiff with depression, prescribed anti-depressants for her, and referred her to a therapist. Plaintiff's MSJ Points and Authorities (Plaintiff's Motion) (ECF No. 19-1) at 6-7. The court's review of the hearing testimony shows that plaintiff was prescribed Seroquel and amitriptyline for her depression. AR 53. The medical records further show that her treating physician at "The Effort," Jaspreet Mann, M.D., conducted office visits with plaintiff on February 7 and April 8, 2013, at which he "continued" plaintiff's Seroquel prescription. AR 514, 518 (Exh. 13F). He then had an

[6] "[T]he claimant alleges depression. Primary Care Clinic notes show the claimant is prescribed Seroquel (Ex. 3F/44, 8F/15, 13F/2)." AR 15.

office visit with plaintiff on June 13, 2013. AR 501-03 (Exh. 13F). At that visit, Mann "added" a prescription of a daily round of "amitriptyline," and "continued" her prescription of "Seroquel." AR 503. However, the medical records do not show any diagnosis of depression or anxiety by Dr. Mann or any other doctor, nor explanation of why he was prescribing (or continuing) amitriptyline or Seroquel. Indeed, Dr. Mann's own notes show that "[t]he patient demonstrates the appropriate mood and affect," AR 503, apparently indicating that plaintiff's depression and anxiety were already under control. Also, the medical records do not show who initially prescribed Seroquel or why.[7]

a. Dr. Mann

The parties do not dispute that Dr. Mann is an "acceptable medical source." 20 C.F.R. § 416.913(a)(1) ("Acceptable medical sources are . . . Licensed physicians (medical or osteopathic doctors)"). However, in order for Dr. Mann's medical records to be the type of evidence that will establish whether plaintiff has a medically determinable impairment, they must contain, among other things, "clinical findings (such as the results of . . . mental status examinations)," and a "diagnosis (statement of disease or injury based on its signs and symptoms)." Id. § 416.913(b)(2) & (4). Here, Dr. Mann's medical records contain no diagnosis of depression or anxiety. Moreover, although Dr. Mann apparently prescribed amitriptyline for plaintiff's depression, AR 503, there is no clinical finding indicating that the prescription was warranted. To the contrary, amitriptyline was prescribed on June 13, 2013, following plaintiff's office visit with Dr. Mann, at which he reported that plaintiff "is oriented to time, place, person, and situation," "has normal insight, exhibits normal judgment," and "demonstrates the appropriate mood and affect." AR 503. The record contains no clinical finding of depression, nor any explanation for why the prescription was made. The court is not suggesting that the prescription was unwarranted, only that there is nothing in Dr. Mann's medical records that suggest why amitriptyline was prescribed, especially when plaintiff's long-standing prescription

---

[7] The first mention of Seroquel appears to be a medical record from February 9, 2011, which states that plaintiff "[s]ays mood helped by Seroquel . . . but no relief from back pain." AR 381 (Exh. 3F).

of Seroquel already appeared to be producing the results Dr. Mann noted.

In summary, there is no evidence from Dr. Mann that plaintiff has a medically determinable mental impairment.

b. Nurse practitioner and LCSW

The ALJ rejected the depression and anxiety diagnoses of the nurse practitioner and the LCSW as not coming from an "acceptable medical source." AR 15. The ALJ is correct on the law. In order to establish the existence of a medically determinable impairment, the ALJ properly considers only evidence from "acceptable medical sources," such as licensed doctors. 20 C.F.R. § 416.913(a). Nurse practitioners are expressly excluded from this category, and are, instead, categorized as "other sources." 20 C.F.R. § 416.913(d)(1) ("other sources" include "nurse practitioners") & (d)(3)("other sources" include "[p]ublic and private social welfare agency personnel"); Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) ("as a social worker, McFarland is not considered an "acceptable medical source[ ]" under the regulations," which "treat '[p]ublic and private social welfare agency personnel' as 'other sources,'" (quoting 20 C.F.R. § 404.1513(d)(3), the identically worded Title II regulation)).[8]

Plaintiff seems to be arguing that the nurse practitioner and the LCSW should be considered "acceptable medical sources" because they worked as part of a team that included doctors, and implies that they were directly supervised by doctors. See Plaintiff's Motion at 6-9. The legal validity of this argument is currently unclear in this circuit. See Molina v. Astrue, 674 F.3d 1104, 1112 n.3 (9th Cir. 2012) (noting that the Ninth Circuit law holding that a nurse practitioner could be an accepted medical source if she works closely with a doctor rested, in part, upon a regulation that has since been repealed). However, the argument fails here on the facts. Plaintiff identifies no part of the record showing that the nurse practitioner or the social worker was directly supervised by a doctor, or worked closely with a doctor, when the diagnoses were issued. Instead, plaintiff asserts merely that the medical records are "a web of review and

[8] Evidence from nurse practitioners and social workers can, however, be used to establish the severity of an impairment whose existence has already been established. See 20 C.F.R. § 416.913(d).

referral." Plaintiff's Motion at 9.

2. Other evidence of depression

The ALJ then turned to other possible sources of evidence of such an impairment. He found that there was no other evidence in the record of plaintiff's claimed depression. The ALJ specifically mentioned the lack of treatment for depression, and plaintiff's "appropriate mood and affect" during mental health exams. AR 15. Plaintiff does not argue that the ALJ erred in this finding, and the court's review of the record shows no error.

In summary, the ALJ correctly determined that the record contains no diagnosis of depression or anxiety by an acceptable medical source. Accordingly there was no error in the ALJ's Step Two finding that there is no evidence of a severe medically determinable mental impairment.

B. Augmenting the Record & Part Two of the Special Technique

Plaintiff argues that the ALJ should have augmented the record with a mental health consultative exam "if he was dissatisfied with the professionalism of the county psychiatric treatment." Plaintiff's Motion at 9-10. Defendant argues that the ALJ had no duty to do so.

The ALJ has the authority to order a consultative exam, and indeed should do so when the record is incomplete, the evidence is ambiguous, or where it is necessary to "fully and fairly develop the record" and "'to assure that the claimant's interests are considered.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Brown v. Heckler, 713 F.2d 441, 443 9th Cir. 1983) (per curiam)); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Reed v. Massanari, 270 F.3d 838, 841-43 (9th Cir. 2001).

Here, the ALJ gave no indication that the record was incomplete or the evidence ambiguous. Nor does the ALJ indicate that more was needed to fully and fairly develop the record. The court finds no error here. Contrary to plaintiff's argument, the ALJ was not "dissatisfied" with the professionalism of the county staff. Rather, the ALJ correctly found that there was no diagnosis of depression or anxiety from an acceptable medical source. AR 15. Had the ALJ stopped there, plaintiff perhaps could argue that further inquiry was warranted. After all, it is true that Dr. Mann, a treating physician, did prescribe an anti-depression medication for

plaintiff, leaving open at least the possibility that Dr. Mann had diagnosed depression after making clinical findings of depression. However, there is no indication in the record that this happened, nor does plaintiff assert that it happened. Rather, the record indicates that Dr. Mann prescribed the medication after someone else made the diagnosis for example, the nurse practitioner or the LCSW, neither of whom is an acceptable medical source).

In any event, the ALJ did not base his Step Two finding solely on the lack of an acceptable diagnosis. The ALJ also found that the absence of treatment for the depression (other than the medication), and the absence of any consequences arising from the depression (such as emergency room visits or psychiatric hospitalization), also tended to show the absence of depression that was severe enough to significantly limit plaintiff's basic work activities. In addition, the clinical findings in the record indicated that plaintiff's depression, even if it existed, was appropriately controlled by the medication she was taking. See Warren v. Comm'r of SSA, 439 F.3d 1001, 1006 (9th Cir. 2006) "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). The ALJ noted that the mental examinations were "benign," and repeatedly show that plaintiff "was fully oriented, had normal insight, normal judgment, and appropriate mood and affect." See AR 15, 503, 514, 518.

C. Step 4: Plaintiff's Residual Functional Capacity[9]

At Step 4, the ALJ found that despite plaintiff's rheumatoid arthritis, she "has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a)." AR 16. In order to be able to perform sedentary work, plaintiff must be able to lift up to 10 pounds. 20 C.F.R. § 416.967(a) "[s]edentary work involves lifting no more than 10 pounds at a time"); SSR 96-9P, 1996 WL 374185 at *6 ("If an individual is unable to lift 10 pounds . . . the unskilled sedentary occupational base will be eroded"). In addition, she should be able to sit for 6 hours a day, and to stand and walk for 2 hours a day. SSR 96-9P, 1996 WL 374185 at *6 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position

9 Plaintiff does not challenge the ALJ's finding at Step 3.

for approximately 6 hours of an 8-hour workday," and "The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday"). Plaintiff challenges this finding solely on the ground that the ALJ improperly rejected the opinion of a treating physician, Dr. Mann. Plaintiff's Motion at 10-12.

Plaintiff's treating physician, Dr. Mann, determined that plaintiff only had the ability to lift less than 10 pounds, to stand and walk less than 2 hours, based upon her rheumatoid arthritis diagnosis. AR 494 (Exh. 10F). Dr. Mann also determined that plaintiff only had the ability to sit less than 6 hours, and that she needed to change her position every 10 minutes, based upon "her description." AR 494-95. Thus, if Dr. Mann's determination were credited, plaintiff could well be disqualified from sedentary work. The ALJ gave Dr. Mann's opinion "little weight" because (1) it was based upon "'her description'" rather than objective findings, (2) it was inconsistent with Dr. Mann's own clinic notes in which he refused to prescribe narcotic pain medications, and (3) it is not consistent with the other medical evidence and opinions in the record. AR 18-19.

1. The treating doctor's opinion

"[T]he medical opinions of a claimant's treating physicians are entitled to special weight." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). Indeed, "the ultimate conclusions of those physicians must be given substantial weight." Id. at 422. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957.

Moreover, if the treating doctor's opinion is contradicted by another doctor's opinion, the ALJ may reject it "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Id. (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).

"To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether 1) contradictory opinions are in the record;

////

and 2) clinical findings support the opinions." Esposito v. Astrue, 2012 WL 1027601 at *3 (E.D. Cal. 2012).

2. Analysis

Plaintiff fails to show that the ALJ erred by rejecting Dr. Mann's opinion. Dr. Mann's opinion that plaintiff could not sit for 6 hours, and that she needed to change positions every 10 minutes, were, according to Dr. Mann's own notes, based solely upon "her [plaintiff's] description." AR 494-95. Dr. Mann identifies no clinical findings that support this conclusion, and plaintiff does not identify any on this appeal.[10] Instead, plaintiff relies upon the diagnoses of rheumatoid arthritis and other conditions by Dr. Mann and Dr. Raul Romea, plaintiff's rheumatologist, and her scores on various health assessments. See Plaintiff's Motion at 11. However, these arguments address a point on which plaintiff has already prevailed, namely, whether plaintiff has a "severe impairment" for purposes of Step Two, that is, an impairment "which significantly limits" plaintiff's "physical or mental ability to do basic work activities." See 20 C.F.R. § 416.920(c). Plaintiff does not identify or explain any clinical findings that support Dr. Mann's Step Four conclusion that plaintiff cannot sit for 6 hours, or that she must change positions every 10 minutes.

Dr. Mann's opinions that plaintiff could not lift 10 pounds, and could not stand or walk for two hours, were, according to his own notes, based upon the diagnosis of "rheumatoid arthritis." AR 494. This conclusion fares no better than the other two, because it is based solely upon the fact that plaintiff is diagnosed with an impairment. This is a Step Two issue, and does nothing to show, under Step Four, that plaintiff cannot lift 10 pounds or stand or walk for 2 hours. See, e.g., Mayes v. Massanari, 276 F.3d 453 (9th Cir. 2001) (affirming the ALJ's determination that plaintiff was not disabled despite her rheumatoid arthritis and other conditions, because she could still perform sedentary work). As with the conclusions that were based solely upon plaintiff's own description, plaintiff here does not identify or explain any clinical findings that

[10] Of course, it is possible that some clinical finding in the medical records does in fact support these assertions. However, neither the ALJ nor this court should "play doctor" by trying to identify and then independently interpret clinical findings that are beyond its expertise.

would support the asserted functional limitations beyond the diagnosis itself.[11]

The ALJ also rejected Dr. Mann's opinion because it was not consistent with the other medical evidence and opinions in the record. The ALJ carefully set out the evidence tending to contradict Dr. Mann's opinion, including the opinions of other physicians Dr. Myint, a treating physician, and Dr. Selcon, a consultative examiner, that plaintiff could carry 10 pounds, and could stand up to 2 hours. AR 18, 320, 324, 327, 423. The ALJ set forth the reasons plaintiff's lack of credibility led him to not credit plaintiff's own assertions of limitations. AR 17-18. These included plaintiff's lack of cooperation during a consultative examination, the mild findings of that examination, the evidence that medications have been relatively effective, and her "drug seeking" behavior. AR 17-19.

The court concludes that both reasons – that Dr. Mann's conclusions were conclusory and not supported by clinical findings, and that his conclusions contradicted the other evidence in the record – are independently sufficient for the ALJ to have rejected Dr. Mann's opinion.[12]

In summary, plaintiff has failed to show that the ALJ committed error by rejecting the opinion of Dr. Mann, one of plaintiff's treating physicians. Without Dr. Mann's opinion, there is no evidence in the record that plaintiff's impairments prevent her from doing sedentary work.

## VIII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 25), is GRANTED; and

////

---

[11] It was therefore harmless error for the ALJ to reject the conclusions regarding the 10 pounds and the standing and walking limitations as being based upon "'her description.'" The same analysis applies, whether the basis for the conclusion was her description or as was the case here, the mere diagnosis of rheumatoid arthritis.

[12] The court therefore finds it unnecessary to address the ALJ's two other reasons for rejecting Dr. Mann's opinion, namely, Dr. Mann's refusal to prescribe narcotic pain medication, and the absence of x-ray findings to explain plaintiff's complaints of intractable pain.

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: April 20, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE